UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| BOBBIE C. GOINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:06-CV-180-C |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Bobbie C. Goins seeks judicial review of a decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI). The United States District Judge referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court has reviewed the administrative record and the arguments of the parties under the standard set forth under 42 U.S.C. § 405(g) and has determined that the Commissioner's decision is supported by substantial evidence, was reached through the application of proper legal standards, and should be affirmed.

## I.    Statement of the Case

Goins alleged in application documents that she suffered from a heart condition, diabetes, and problems with her right knee that limited her ability to work and that she became disabled on August 22, 1999. (Tr. 80, 529.) After a hearing, an Administrative Law

Judge (ALJ) determined on August 29, 2003, that Goins was not disabled because she retained the residual functional capacity to perform a significant number of jobs that existed in the national economy. (Tr. 15-20.) Goins ultimately appealed the decision in the United States District Court, and the undersigned United States Magistrate Judge recommended in a Report and Recommendation that Goins' case be remanded for further administrative proceedings. (*See* Tr. 529, 547.) The United States District Judge adopted the Report and Recommendation on December 21, 2004. *Id.* Prior to the court's remand order, Goins filed another application for SSI and her application was granted with an established disability onset date of August 30, 2003. (Tr. 583.)

Upon remand of Goins' claim on the first application, her case was assigned to ALJ Herbert J. Green. (Tr. 547.) Based on the finding of disability in the second application, Judge Green determined that the relevant period of time for the application at issue in this case was the time period between August 22, 1999, the date on which Goins alleged her disability began and August 30, 2003, the date on which it was determined in the second application that her disability began. (Tr. 529-30.) Judge Green held a hearing and determined at the fifth step of the sequential disability analysis that Goins was not disabled during the relevant period of time. (Tr. 529-40.)

Goins appeals the Commissioner's final decision with three points of error. She argues Judge Green failed to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT); erred in determining her Residual Functional Capacity (RFC); and failed to discuss medical evidence that was favorable to her.

## II.      Judge Green Did Not Err at Step Five of the Sequential Disability Analysis

At the fifth step of the sequential disability analysis, the burden shifts to the Commissioner to show that, considering the claimant's RFC, age, education, and past work experience, the claimant can perform other work. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001) (citing 20 C.F.R.§ 404.1520(f)); *see also* 20 C.F.R. § 416.920(g) (2006). The Commissioner must identify the particular types of work the claimant can perform despite his impairments. 20 C.F.R. § 404.945(a). Any jobs the Commissioner determines the claimant can perform must exist in significant numbers in the national economy. 20 C.F.R. § 404.960(c).

In this case, Judge Green determined that Goins retained the RFC to perform light work that would not require overhead work with the non-dominant hand or repetitive handling and that could be performed by an individual who had less than a moderate concentration deficit in a temperature-controlled environment free of dust, fumes, and chemicals. (Tr. 538.) Based on testimony from the vocational expert, Judge Green determined that Goins could perform the jobs of machine tender, towel rolling machine operator, and chaperone. (Tr. 539.)

Goins argues there are conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT)[1] regarding the skill and functional capability

---

[1]

The DOT, published by the United States Department of Labor, is a comprehensive listing of jobs existing in the United States. For each listed job, the DOT indicates the responsibilities and requirements for the particular job. For each listed job, the DOT indicates the specific tasks and responsibilities of that job in addition to the strength, education, and vocational preparation requirements. Dictionary of Occupational Titles, http://www.oalj.dol.gov/libdot.htm (last visited Feb. 10, 2007).

requirements in the foregoing jobs and that Judge Green erred because he did not resolve the conflicts.  The Defendant concedes there are "problems" between the vocational expert's testimony and the descriptions in the DOT for the jobs of machine tender and tile rolling operator but argues there is substantial evidence supporting Judge Green's determination that Goins can perform the job of chaperone.

The vocational expert testified that the job of chaperone involves chaperoning social functions at hotels and restaurants, that the job was characterized as light and unskilled work, and that it required only occasional handling.  (Tr. 561-62.)  According to the DOT, the job of chaperone involves chaperoning young people at social functions held in hotels or restaurants.  An individual in this job greets guests and answers questions regarding the program, arranges for entertainment, such as games, concerts, and movies, asks guests to observe the rules of the establishment or reports offenders to management, and may collect tickets for admission to events.

There is no conflict between the vocational expert's description of the job and that listed in the DOT.  Goins, however, claims the job requires a reasoning development level of three and argues that she is an African-American women situated in the lower socioeconomic class, speaks with poor grammar, and although she has a General Equivalency Diploma (GED), she has mental limitations, which Judge Green recognized that she had less than a moderate concentration deficit.

Goins' arguments do not require remand.  According to the DOT, jobs classified as requiring a reasoning development level of three, such as chaperone, require the worker to

4

apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations. *See* "Components of the Definition Trailer," Appendix C, http://www.oalj.dol.gov/PUBLIC /DOT/REFERENCES/DOTAPPC.HTM (last visited Feb. 10, 2007).

Based on evidence in the record, Goins is capable of performing jobs requiring such skills. The record shows Goins attained her GED, completed a program to be a certified nurses assistant, was not limited in her ability to read a newspaper, and read books in her spare time. (Tr. 86, 129, 141, 784.) A psychiatrist determined after mental status testing that she was able to concentrate "fairly well" and that her insight was adequate and her judgment was intact. (Tr. 784.) Although Judge Green found Goins was limited to jobs that required less than a moderate concentration deficit, there is nothing in the DOT's definition of chaperone indicating a person with such a concentration deficit could not perform the job. There is therefore no direct or indirect conflict between the vocational expert's testimony and the definition in the DOT. Judge Green's reliance upon the testimony of the vocational expert was therefore not error. *See Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000).

In addition, the vocational expert's testimony provides substantial evidence for Judge Green's determination that there were a significant number of jobs in the national economy that Goins could perform. The vocational expert testified that there are 23,000 chaperone jobs in the national economy. (Tr. 562.) "Work exists in significant numbers in the national economy when there is a significant number of jobs (in one or more occupations) having

5

requirements which meet [the claimant's] physical or mental abilities and vocational qualifications.  20  C.F.R. § 404.966(b).

## III.    Judge Green Did Not Err in Determining Goins' RFC

Goins argues Judge Green's determination that she could perform limited light work is incorrect because her treating physician, Kimberly Bethune, M.D., and her treating cardiologist, Mounir Y. Borno, M.D., determined that she was limited to less than sedentary work.   Goins argues Judge Green failed to comply with Social Security rulings and regulations that require the ALJ to consider evidence from treating physicians when determining the claimant's residual functional capacity and present good cause for rejecting such evidence.  In addition, Goins contends the court in *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), held that an ALJ's rejection of opinions or medical records from a claimant's treating physician is justified when the rejection is supported by overwhelming medical evidence from other treating and reviewing physicians.

The court must reject Goins' characterization of the holding in *Newton*.  The court in *Newton* did not hold that the ALJ's rejection of a treating physician's opinion is justified only in cases in which there is overwhelming medical evidence supporting the rejection.  Rather, the court held that in the absence of reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, the ALJ may reject the opinion of the treating physician only if the ALJ performs an analysis of the treating physician's views under the factors set forth in the regulations. *Newton*, 209 F. 3d at 453 (citing 20 C.F.R. § 404.1527(d).  In applying these factors, an ALJ must consider: (1) the length of the treating

6

relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) whether the physician provides medical evidence to support his opinion; (5) whether the opinion is consistent with the record as a whole; and (6) the specialization of the treating physician. *Id.* (citing  20 C.F.R. § 404.1527(d)); *see* 20 C.F.R. § 416.927(d). The court has also held that there is good cause to reject the opinion of any physician when such opinion is brief and conclusory, unsupported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

Dr. Bethune completed a form on January 30, 2003, on which she indicated in part that Goins' impairments were of moderate severity and that she would require supine rest for a minimum of two hours per day and would need to elevate her legs on a daily basis. (Tr. 288-89.)  Although Dr. Bethune indicated Goins would need to elevate her legs and rest for a minimum of two hours per day, she did not indicate whether Goins would require a rest period during the workday or whether she would need to elevate her legs during the workday. (*See id.*)   Further, Dr. Bethune did not provide her opinion as to how Goins' impairments would impact upon the specific exertional and non-exertional requirements of work. The only opinion Dr. Bethune offered regarding Goins' ability to perform the requirements of work was that she was unable to work a regular eight-hour workday.  (*Id.*)

An opinion that a patient is unable to work is characterized as a legal conclusion rather than a medical opinion and as such not subject to analysis under the regulatory factors.  *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) ("Among the opinions by

treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'")   Nonetheless, Judge Green's narrative demonstrates he understood Dr. Bethune was Goins' primary care physician and the type of treatment she provided Goins as well as the frequency of examination and the nature and length and extent of the treating relationship between her and Goins.  (Tr. 534-35.)   Judge Green, however, was entitled to  determine the credibility of Dr. Bethune's opinion and entitled to reject the opinion with good cause.  *See Greenspan*, 38 F.3d at 237.   He declined to adopt Dr. Bethune's opinion because it was not supported by the evidence.  (Tr. 534.)

Dr. Borno completed a functional capacity form for patients with cardiac conditions on February 3, 2003.  (Tr. 390-92.)  Dr. Borno indicated in part that Goins suffered from coronary artery disease and circled options on the form indicating that Goins' cardiac disease was of the type that resulted in marked limitations in physical activity and that ordinary physical activity should be markedly restricted.  (Tr. 390.)  On an attached "Cardiac Questionnaire" Dr. Borno indicated that it is was reasonable for Goins to need to lie down for a minimum of two hours during the daytime; that she would need to elevate her legs on a daily basis; and that her cardiac condition produced symptoms of chest pain and shortness of breath as frequent as every other day .  (Tr. 391-92.)  Finally, he indicated that he did not believe Goins was physically capable of performing a full eight-hour work day.  (Tr. 392.)

Judge Green's narrative and chronological summary of the medical evidence demonstrates that he understood Dr. Borno's medical specialty and the type of treatment he provided Goins as well as the frequency of examination and the nature and length and extent

8

of the treating relationship between he and Goins.  (Tr. 533-35.)  However, Judge Green declined to adopt Dr. Borno's opinion because he found it was not supported by the medical evidence in the record.  (Tr. 535.)  Judge Green did not err.  In fact, on September 9, 2003, seven months after Dr. Borno completed the form at issue, the physician refused to sign a form for Goins to obtain a disabled parking pass, noting that he "refused and told her that she is not disabled."  (Tr. 606.)

Judge Green complied with Fifth Circuit precedent and provided good cause before rejecting Dr. Bethune's and Dr. Borno's opinions, and his decision to reject the opinions as well as his RFC determination is supported by substantial evidence.  Although the medical records show that Goins' physicians treated her for a number of medical impairments during the relevant period of time, the evidence supports Judge Green's determination that Goins was capable of limited light work.  For example, Goins testified that during the four-year period at issue in this case, she provided daily care for her four grandchildren who lived with her and who ranged in age between three years old and eleven years old.  (Tr. 553-55.)

IV.     **Judge Green Did Not Err in Evaluating the Medical Evidence**

Goins argues Judge Green failed to consider and therefore implicitly rejected evidence from Dr. Bethune which shows she suffers from bilateral heel spurs. (*See* Tr. 658.) Citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994), she claims the ALJ must explain his reasons for rejecting evidence favorable to a claimant and complains that Judge Green did not discuss the evidence regarding her heel spurs. In *Falco*, the court declined to adopt a rule that would require the ALJ to "articulate specifically the evidence that supported his decision and discuss the evidence that was rejected." *Id.* at 163. On the other hand, the court acknowledged that the ALJ must articulate reasons for rejecting the claimant's subjective complaints of pain when the evidence clearly favors the claimant. *Id.*

In this case, Judge Green articulated numerous reasons for rejecting Goins' complaints of pain and his reasons are supported by the record. (Tr. 536-37; *See, e.g.*, 183, 259, 261, 553-54, 556, 606.) In addition, Judge Green noted that Goins complained to Dr. Bethune that she felt bilateral heel pain when she walked. (Tr. 533, 661.) Judge Green did not, however, determine that Goins' heel spurs limited her ability to stand or walk, and substantial evidence supports his determination. First, on the date Dr. Bethune noted Goins had heel spurs she recommended only conservative treatment; she recommended heel inserts and exercise with a stationary bicycle and swimming to help with weight loss. (Tr. 658.) Three months later Dr. Bethune noted in an examination note that Goins had recently moved into a new home, was unpacking boxes and engaged in a significant increased amount of exercise. (Tr. 654.) Dr. Bethune's examination notes do not support a conclusion that Goins' heels spurs caused

significant limitations.

In addition, Goins never alleged limitations caused by heel spurs.  She indicated on application documents that she was not limited in her ability to stand and that she was limited in her ability to walk because she experienced shortness of breath.  (Tr. 141; *see also* 93, 95, 100, 132-22.)  When asked at the hearing on July 10, 2003, why she was unable to work she claimed she had problems with her arms, diabetes, and her heart, and experienced shortness of breath.  (Tr. 486.)  She testified that she experienced difficulty walking not because of pain in her heels, but because she experienced shortness of breath.  (Tr. 493, 501.)

Substantial evidence supports Judge Green's determination as to the credibility of Goins' subjective complaints and the evidence does not support a conclusion that Goins' heel spurs caused significant limitations.

## V.    Recommendation

Substantial evidence supports the Commissioner's ultimate conclusion that Goins was not disabled between August 22, 1999, and August 30, 2003.  Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Goins' appeal with prejudice.

## VI.    Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court.  A party's failure to file written objections within ten days shall

11

bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated:   March 2, 2007.

NANCY M. KOENIG
United States Magistrate Judge